# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re                                                      Case No. 05-32220-WRS
                                                           Chapter 7
CUSTOM SERVICES
INTERNATIONAL INC,

     Debtor

## MEMORANDUM DECISION

This Bankruptcy case is before the Court upon the applications for compensation filed by Ron Schlager (Doc. 83), and Jason Wallach. (Doc. 104). Schlager seeks fees in the amount of $25,700.00 and expenses in the amount of $853.85 for a total of $26,583.85. Wallach seeks fees in the amount of $48,060.00 and expenses in the amount of $4,842.51, for a total of $52,194.46. In response to questions for the Court, both Schlager and Wallach have filed additional materials in support of their applications. (Doc. 114, 116). Chapter 7 Trustee Daniel Hamm has filed objections to the applications. (Docs. 139, 140). Schlager and Wallach have filed responses to the Trustee's objections. (Doc. 144, 145).

## I. FACTS

Custom Services International, Inc., (CFI) filed its petition in bankruptcy on March 28, 2005, under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court in Nevada. CFI owned a factory which manufactured latex condoms in Eufaula, Alabama. CFI was not operating its business at the time it filed and there was never any intention that it would attempt to reorganize as a going concern. Thus, it would appear that the only purpose of this bankruptcy filing was to maximize the value received for the sale of the Eufaula, Alabama property.

This bankruptcy filing appears to have been triggered by a civil suit which was filed in the United States District Court for the Middle District of Alabama in proceedings styled <u>Presidential Finance Corp. v. Custom Services International, et. al.</u>, Case No. 05-CV-87. In this civil action, Presidential Finance brought suit to collect on certain promissory notes, which were secured by what appears to be substantially all of the personal property owned by CSI and which were guaranteed by former shareholders of CFI. It also appears from the pleadings that Presidential had a second mortgage upon the Debtor's real property. Ron Schlager, one of the applicants here, represented CSI in the District Court suit as well as codefendants Michael A. Brown, Lillie C. Thomas, and LMR International, Inc. Schlager did not disclose his representation of Brown, Thomas or LMR International at the time he made application for employment.

Michael A. Brown is a former shareholder of CSI who was also a guarantor of the indebtedness owed to Presidential. In addition, the Chapter 7 Trustee in this bankruptcy proceeding has brought suit against Brown, alleging that he had received preferential transfers from CSI prior to the bankruptcy filing. <u>See</u>, <u>Hamm v. Brown, (In re: Custom Services International, Inc.)</u>, Adversary Proceeding 06-3061. The interests of CSI and Brown quite clearly conflict and Schlager's representation of both Brown and CSI was improper. Schlager violated the requirements of Banrkruptcy Rule 2014(a), when he failed to disclose his representation of Brown. Similarly, Schlarger also should have disclosed his representation of Lillie Thomas and LMR International.

2

Aside from the problem of Schlager's undisclosed conflict of interest, one should bear in mind what was and was not accomplished in this bankruptcy case. It does not appear that Schlager made any material contribution to the bankruptcy case. Rather, it appears that Wallach handled all of the bankruptcy matters. As the automatic stay took effect upon the filing of the CSI bankruptcy case, the only need for representation in that suit was for the nondebtor parties. In other words, Schlager's employment benefitted Brown, Thomas and LMR International. Contrary to the representations made, Schlager's work in the civil action in District Court did not advance the interests of the Debtor in the bankruptcy filing. Rather, it appears that the bankruptcy filing was used as a tactical device to protect Brown, Thomas and LMR Internation.

Schlager makes the argument that his services in the District Court action were beneficial to the estate because discovery was conducted to determine the amount of the indebtedness owed on the various promissory notes. Such a claim cannot be taken seriously. If Schlager's purpose was to determine the amount of the indebtedness owed by CSI, a far more efficient means was available in the claims allowance process in bankruptcy court, or in the litigation of a motion for relief from the automatic stay. It appears that Schlager is attempting to shift the cost of defending Brown, Thomas and LMR in the District Court action to the estate of CSI.

## II. RONALD SCHLAGER

The Court will discuss Schlager's application separate from the application made by Wallach. The Court has two problems with Schlager's application for fees. First, his time was spent defending a civil action in District Court which benefitted the three nondebtor parties but not the estate. Second, and more serious, is that Schlager was operating under an undisclosed

3

conflict of interest in that he was representing Michael Brown, Lillie Thomas and LMR International, Inc.

The United States Court of Appeals for the Eleventh Circuit handed down a decision in 1994 where an application for professional fees was denied because counsel had an undisclosed conflict of interest under what it called "egregious" facts. <u>Electro-Wire Products, Inc., v. Sirote & Permutt, P.C., (In re: Prince)</u>, 40 F.3d 356 (11th Cir. 1994). The court in <u>Prince</u> acknowledged that the existence of a conflict of interest does not necessarily result in a denial of fees, "in exercising the discretion granted by the statute we think the bankruptcy court should lean strongly toward denial of fees." <u>Id</u>. at 360 (citing <u>Gray v. English</u>, 30 F.3d 1319, 1324 (10th Cir. 1994)).

Actual harm to the estate in the case at bar may be demonstrated here in that Schlager represented Michael Brown at the same time that he was representing the estate. Chapter 7 Trustee Hamm promptly brought suit against Brown to recover a voidable preference. One need look no farther than Adversary Proceeding 06-3061 to find a conflict of interest. The debtor was entitled to a lawyer who was not operating under a conflict of interest. As stated by the court in <u>Prince</u>, "the accurate measure of prejudice here is not what Sirote [debtor's counsel] actually did or did not do in handling Prince's case, but rather whether Sirote could have unbiasedly made decisions in the best interest of its client. We think it could not." <u>Prince</u>, at 360. The same can be said here. Schlager could not have given CSI unbiased advice on whether it should sue Brown, another client. For this reason, compensation is denied.

4

Case 05-32220   Doc 147   Filed 08/17/06   Entered 08/17/06 13:23:50   Desc Main
Document      Page 4 of 9

The Court conducted a pretrial conference in <u>Hamm v. Brown, (In re: Custom Services International, Inc.)</u>, Adv. Pro. No. 06-3061, on August 15, 2006. The Court inquired of counsel for the Trustee as to the nature of the claim against Brown and was advised that the Trustee contends that Brown had been using the funds of CSI for personal use. The Trustee contends that more than $100,000.00 has been diverted by Brown. Schlager's conflict of interest is particularly egregious here in that it is alleged that Brown was looting the estate. Schlager could not have possibly provided the estate unbiased counsel while simultaneously representing Brown. The facts in this case are more egregious than those in <u>Prince</u> and for this reason, Schlager's application for professional compensation should be denied.

### III. JASON WALLACH

Jason Wallach seeks fees in the amount of $48,060.00 and expenses in the amount of $4,842.51, for a total of $52,194.46. (Doc. 104). Applications for professional fees are governed by the provisions of 11 U.S.C. § 330. As a threshold matter, an applicant may be compensated only for "actual" and "necessary" services rendered. <u>See</u> <u>In re Southern Diesel</u>, 309 B.R. 810 (Bankr. M.D. Ala. 2004)(Compensation not allowed unless services were necessary and performed within a reasonable time). Having carefully examined Wallach's fee application, the Court is of the view that some of the services for which compensation is sought were not necessary.

5

To make the determination of which services are necessary, one must first look at the nature of bankruptcy proceeding. This case began when a Chapter 11 petition was filed in Nevada. At that time, the Debtor corporation owned a condom factory in Eufaula, Alabama. The business was not in operation and there was never any thought to make an attempt to resurrect the operations. Rather, from the outset of this case, the only legitimate purpose was to sell the condom factory in Eufaula. Putting aside for the time being the question of why a petition under Chapter 11 was filed, the first question is why Nevada. Shortly after the petition was filed, Colonial Bank moved to transfer the case to the Middle District of Alabama. The United States joined in that motion one day later. Much of the time spent by Wallach was to defend the choice of Nevada as venue for the bankruptcy proceeding and travel to what appears to have been an inconvenient forum for all involved, including the Debtor and its lawyer.[1]

---

[1] The following amounts were charged relating to the venue issue: (1) 03-24-05, 0.4 hr. $120.00; (2) 03-28-05, 0.7 hrs., $210.00; (3) 03-28-05, 0.4 hr., $120.00; (4) 03-29-05, 0.5 hr., $150.00; (5) 03-29-05, 0.4 hr., $120.00; (6) 03-30-05, 0.2 hr., $60.00; (7) 03-31-05, 0.1 hr., $30; (8) 04-06-05, 0.2 hr., $60; (9) 04-10-05, 0.5 hr., $150; (10) 04-11-05, 9.7 hr., $2,910; (11) 04-19-05, 0.5 hr., $150; (12) 04-20-05, 0.1 hr., $30; (13) 04-20-05, 0.2 hr., $60; (14) 04-20-05, 0.4 hr., $120; (15) 04-20-05, 1.0 hr., $300; (16) 04-25-05, 0.1 hr., $30; (17) 04-25-05, 0.1 hr., $30; (18) 04-26-05, 0.1 hr., $30; (19) 04-26-05, 0.5 hr. $150; (20) 04-27-05, 7.5 hr. $2,250; (21) 05-06-05, 0.2 hr., $60; (22) 05-06-05, 0.5 hr., $150; (23) 05-06-05, 1.0 hr., $300; (24) 05-06-05 0.2 hr., $60; (25) 05-09-05, 1.1 hr., $330; (26) 05-09-05 5.5 hr., $1,650; (27) 05-10-05, 0.9 hr., $270; (28) 05-10-05, 0.6 hr., $180; (29) 05-11-05, 0.1 hr., $30; (30) 05-17-05, 0.1 hr., $30; (31) 05-18-05, 0.4 hr., $120; (32) 05-18-05, 0.3 hr., $90; (33) 05-19-05, 0.9 hr., $270; (34) 05-20-05, 0.2 hr., $60; (35) 05-20-05, 0.1 hr., $30; (36) 05-23-05, 0.3, $90; (37) 05-24-05, 0.2 hr., $60; (38) 05-26-05, 0.3 hr., $90; (39) 05-27-05, 0.2 hr., $60; (40) 05-27-05, 1.4 hr., $420; (41) 05-31-05, 5.9 hr., $1.770; (42) 06-01-05, 0.1 hr., $30; (43) 06-01-05, 0.3 hr., $90; (44) 06-01-05, 0.3 hr., $90; (45) 06-02-05, 0.3 hr., $90; (46) 06-02-05, 0.1 hr., $30; (47) 06-03-05, 0.8 hr., $240; (48) 06-03-05, 0.4 hr., $120; (49) 06-03-05, 0.2 hr., $60; (50) 06-07-05, 0.3 hr., $90; (51) 06-09-05, 8.0 hr., $2,400; (52) 06-14-05, 0.2 hr., $60; (53) 06-15-05, 0.2 hr., $60; (54) 06-16-05, 0.5 hr., $150; (55) 06-21-05, 0.1 hr., $30; (56) 06-27-05, 0.4 hr., $120. The total of these entries is 56.2 hours.

It appears that the civil suit in Middle District of Alabama was the event which precipitated the bankruptcy filing. In response to the motion to transfer venue, Wallach filed a response on behalf of the debtor-in-possession contending that Nevada was a more convenient forum for creditors, a patently outrageous claim in that Nevada was chosen to maximize the inconvenience to creditors. As the choice of Nevada as a venue was done in bad faith, the Court will disallow all fees in connection with the filing there, all efforts to oppose the transfer from Nevada to the Middle District of Alabama, and all charges which appear to have incurred as a result of the choice of venue. The total fees disallowed are 56.2 hours at $300.00 per hour for a reduction of $16,860.00.[2]

In addition, Wallach's fee application contains 16 entries, totaling 4.9 hours for services rendered after November 8, 2005, the date on which the case was converted. Post-conversion services rendered by counsel for the Debtor (that is services rendered after the case is converted to a case under Chapter 7) may not be compensated from estate funds. In re: American Steel Product, Inc., 197 F.3d 1354 (11th Cir. 1999). This results in a reduction of $1,470.00.

To summarize here, if we start with the total amount requested $52,194.46, and deduct the amounts disallowed (i.e. $16,860.00 and $1,470.00), it leaves $33,864.46. Wallach has been paid a retainer of $20,000. Therefore, the net amount due is $13,864.46. Notwithstanding the deductions set forth above, one might reasonably question whether an attorney's fee in the amount of $33,864.46 is reasonable in light of the circumstances here. While it does not appear that Wallach was operating under a conflict of interest, as was Schlager, one gets the sense that

---

[2] The dates and amounts of 56 entries for a total of 56.2 hours is detailed in Footnote No. 1.
7

the primary purpose of this bankruptcy filing was to protect the guarantors, Brown and Thomas, rather than to maximize the recovery for the estate. It appears that the $200,000.00 obtained was at most a byproduct of counsel's efforts in this case rather than the purpose.

Examination of the detail of several entries in Wallach's application reveals several troubling entries. For example, on July 19, 2005, Wallach spent 30 minutes conducting "legal research, memo and emt Lillie re injunction against suing guarantors (LMR and Lillie) in pre confirmation of chapter 11." On June 7, 2005, There is an entry "ems Lillie re keeping forklift." One wonders why a corporation which is out of business would want to keep a forklift. Further, there is an entry for July 12, 2005, which states "emf Lillie re refi and counsel." If "refi" means refinance, it would appear that Lillie Thomas and others were considering refinancing corporate debt and perhaps acquiring assets for future operations under another entity. There is no need for a corporation which is being liquidated to refinance its debt. While one might quarrel whether the Court has correctly interpreted several cryptic entries in a lengthy attorney fee application, based upon the experience of the undersigned, it appears that there is a great deal more going on here than simply the liquidation of a condom factory in Eufaula. Undoubtedly, some of the services rendered by Wallach were beneficial to the estate. It is equally certain, that much of the time spent by Wallach was to advance the interests of the guarantors of the corporate indebtedness without any benefit to the estate.

Attorney fees are not to be allowed unless they are performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue or task addressed. 11 U.S.C. § 330(a)(3)(D). If we start with the amount to be allowed Wallach, which is $33.864.46, and deduct his expenses, which are allowed in full, (i.e. $4,842.51), we are left

8

with a difference of $29,021.95. If we then divide that amount by an hourly rate of $300.00 per hour, we calculate approximately 96 hours of allowed compensation. Given that there was never any hope of reorganization and given that only modest efforts were made to sell the condom factory in Eufaula and given that much of the work charged by Wallach appears to concern the interests of the guarantors rather than the estate, the Court is of the view that an allowance of compensation for 96 hours is more than fair given the facts of this case.

## IV. CONCLUSION

The application of Ronald Schlager for attorney's fees is denied because he had an undisclosed conflict of interest in that he represented Ronald Brown, Lillie Thomas and LMR International at the same time he was purporting to represent the debtor-in-possession. The application of Jason Wallach is allowed in the reduced amount of $33,864.46. Wallach spent a considerable amount of time to defend a choice of venue which was made in bad faith. Moreover, to the extent that Wallach's services benefitted the estate, it does not appear that they were performed in reasonable amount of time.

    Done this 17th day of August, 2006.

                                                               /s/ William R. Sawyer
                                                               United States Bankruptcy Judge

c: Jason Wallach, Esq.
   Ron Schlager, Esq.
   Daniel G. Hamm, Trustee
   Teresa R. Jacobs, BA